# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KEISHAW HADLEY,**

       **Plaintiff,**

**v.**                                     **Case No. 8:14-CV-0040-T-33AEP**

**CAROLYN W. COLVIN,**
**Acting Commissioner of the United**
**States Social Security Administration,**

       **Defendant.**

_____/

## REPORT AND RECOMMENDATION

The Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Upon a review of the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the ALJ's decision, the administrative record, and the pleadings and memoranda submitted by the parties in this case, and for the reasons set forth herein, I recommend that the Commissioner's decision in this case be **REVERSED AND REMANDED**.

## I.  Background

The Plaintiff filed for DIB and SSI on June 15, 2010, alleging an onset of disability on May 31, 2009.  R. 195-216.  The Plaintiff's applications were denied initially and upon reconsideration.  R. 84-115.  The Plaintiff requested and received a hearing, which was held on August 7, 2012 before ALJ Arline Colon (the "Hearing").  R. 53-70.  In a decision dated August

31, 2012 (the "Decision"), the ALJ found the Plaintiff not disabled as defined under the Act.  R. 34-44.  The Plaintiff timely exhausted her administrative remedies, and this case is properly before the Court for review under 42 U.S.C. § 405(g).

## II.  The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-point sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

In her Decision, the ALJ performed the required five-step sequential analysis.  R. 34-44. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the date of alleged onset.  R. 36.  At step two, the ALJ determined that the Plaintiff suffered from the severe impairments of osteoarthritis of the right knee, morbid obesity, a history of asthma, bipolar I disorder with psychotic features, adjustment disorder, mood disorder, post traumatic stress disorder, generalized anxiety disorder with agoraphobia, and a history of cannabis abuse. R. 36-37.  At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 37-38.  Next, the ALJ found that the Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of medium work.

R. 38-43.  At step four, based in part on the testimony of a vocational expert ("VE") at the Hearing, the ALJ determined that the Plaintiff was capable of performing past relevant work as a collections clerk, telephone solicitor, certified nursing assistant, telephone operator, and office clerk.  R. 43.  Based on her finding at step four, the ALJ concluded that the Plaintiff was not disabled under the Act.  R. 43-44.

### III. Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Substantial evidence is "more than a scintilla but less than a preponderance.  It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).  If the Commissioner's findings of fact are supported by substantial evidence, they shall be conclusive. 42 U.S.C. § 405(g).  Further, when the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]"  *Id.*  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  *Foote v. Chater*, 67 F.3d 1533, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (noting that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

The Plaintiff challenges the ALJ's Decision on nine grounds:

1)          The ALJ failed to include all of the Plaintiff's limitations in her hypothetical to the VE;

2)          The ALJ failed to consider all of the Plaintiff's severe impairments;

3)          The ALJ failed to properly weigh all of the Plaintiff's GAF scores;

4)          The ALJ failed to properly weigh all of the medical opinions on record;

5)          The ALJ failed to use the proper standard in analyzing the Plaintiff's mental impairments;

6)          The ALJ failed to properly evaluate the Plaintiff's RFC;

7)          The ALJ failed to properly evaluate whether the Plaintiff met the criteria for a Listed Impairment;

8)          The ALJ failed to properly utilize the Eleventh Circuit's pain standard; and

9)          The ALJ failed to properly evaluate whether the Plaintiff could perform her past relevant work.

For the reasons discussed below, the Court finds that the ALJ's Decision was not based on substantial evidence and did not comport with applicable legal standards.

### A.     The ALJ's Evaluation of the Plaintiff's GAF Scores

The Plaintiff argues that the ALJ failed to properly evaluate several GAF scores in the medical record. In her brief, the Plaintiff notes that the ALJ "list[ed] the GAF scores that [the Plaintiff] was given by various medical practitioners." (Dkt. No. 15 at 5.) "However, nowhere in her opinion does [the ALJ] state what weight she is going to give such GAF scores." (Dkt. No. 15 at 5.) Further, the "issue of the GAF scores is particularly significant in this case in that

[Randolph Hemsath, M.D.], a treating psychiatrist at Boley Centers, which is a psychiatric housing program for the mentally disabled homeless, gave Ms. Hadley a GAF score of 29, which is indicative of extremely serious symptoms per the GAF scale and certainly would show an inability to sustain work." (Dkt. No. 15 at 5.)  In addition to Dr. Hemsath's assigned GAF score of 29 (R. 456), a number of other medical sources throughout the record imposed GAF scores at or below 50, which indicated serious symptoms and impairment in functioning.  *See* R. 341 (assigning a GAF score of 45), 361 (assigning a GAF score of 50), 364 (assigning a GAF score of 50), 365 (assigning a GAF score of 50), 376 (assigning a GAF score of 50), 402 (assigning GAF scores of 49, 50, and 57 in three progress notes), 418 (assigning a GAF score of 49), 431 (assigning a GAF score of 40).  In her Decision, the ALJ mentioned some of the GAF scores contained in the record, including Dr. Hemsath's GAF score of 29, but did not articulate any weight to any of the GAF scores denoting serious symptoms throughout the record.  Thus, the relevant question for the Court is whether the ALJ's omission in this regard constitutes reversible error that warrants remand.

As the Defendant correctly notes in its brief, "[c]ourts in the Eleventh Circuit have found that '[r]eliance upon a GAF score is of questionable value in determining an individual's mental functional capacity' because, as an overall assessment, it is not an opinion regarding a claimant's specific functional limitations." (Dkt. No. 17 at 15 (citations omitted).)  Nevertheless, GAF scores are routinely used by "mental health physicians and doctors … to rate the occupational, psychological, and social functioning of adults."  *See McCloud v. Barnhart*, 166 F. App'x 410, 413 n. 2 (11th Cir. 2006) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision, 4th ed. 2000)).  Further, an ALJ must consider all materially relevant evidence and "state with particularity the weight he gave the different medical

opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled.").  Therefore, while a GAF score may not reveal specific functional limitations, it is often accompanied by a description of a plaintiff's specific symptoms and may be useful in determining how a given medical source viewed a plaintiff's broader mental functionality at a given moment in time.  Indeed, the Eleventh Circuit has held that an ALJ may not simply ignore GAF scores in the medical record when they indicate serious symptoms. *See McCloud v. Barnhart*, 166 F. App'x 410, 413 n. 2 (11th Cir. 2006).

In the 2006 case *McCloud v. Barnhart*, the Eleventh Circuit evaluated whether an ALJ erred by failing to articulate the weight afforded to two GAF scores in the record.  *See McCloud v. Barnhart*, 166 F. App'x 410 (11th Cir. 2006).  For the first GAF score of 45, the parties agreed "that the ALJ erred when he labeled [the plaintiff's] GAF score as reflective of moderate symptoms," in spite of it actually indicating serious symptoms.  *See id* at 418.  However, the Court rejected the government's argument that this mistake was harmless error and instead found that the ALJ must articulate the weight afforded to this GAF score since it indicated serious symptoms.  *See id* at 418 ("With the knowledge that a GAF score of 45 reflects severe impairments, the ALJ should determine what, if any, weight to place on the score.").  Unlike the ALJ's consideration (albeit improper) of the first GAF score of 45, the ALJ did not discuss the second GAF score of 48.  *Id*.  The Eleventh Circuit found that the ALJ's failure to consider this GAF score was also error and directed the ALJ, on remand, to consider "what, if any, weight to accord [the plaintiff's] 2000 GAF score."  *Id*. (noting that the ALJ "failed to consider [the plaintiff's] GAF score of 48 … when determining whether she was disabled").

In this case, while the ALJ mentioned Dr. Hemsath's GAF score of 29, she did not

articulate the weight afforded to this score or his treatment notes, which indicated serious mental symptoms. R. 454-56. The ALJ also failed to consider or discuss the numerous other GAF scores throughout the record indicating serious symptoms. *See* R. 341 (assigning a GAF score of 45), 361 (assigning a GAF score of 50), 364 (assigning a GAF score of 50), 365 (assigning a GAF score of 50), 376 (assigning a GAF score of 50), 402 (assigning GAF scores of 49, 50, and 57 in three progress notes), 418 (assigning a GAF score of 49), 431 (assigning a GAF score of 40). While most of these GAF scores were issued by nurse practitioners and licensed mental health counselors, who are not acceptable medical sources under the Social Security regulations, an ALJ must nevertheless demonstrate that she considered this evidence where it supported Dr. Hemsath's opinions as well as the Plaintiff's subjective complaints. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d) (stating that "evidence from other sources," such as nurse practitioners or licensed mental health counselors, may be used "to show the severity of [a claimant's] impairment(s) and how it affects her ability to" engage in work-related activities); *see also Williams v. Astrue*, Case No. 3:07-cv-501-J-HTS, 2008 WL 1930619, at *2 (M.D. Fla. Apr. 30, 2008) (noting that an "ALJ is not free to disregard the opinions of health care professionals simply because they are not medical doctors") (citations omitted); *see also* SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006) ("Opinions from ... medical sources ... not technically deemed 'acceptable medical sources' ... are important and should be evaluated on key issues ....").

Overall, since the ALJ did not sufficiently evaluate all of the relevant medical evidence on record, including the GAF scores denoting serious symptoms issued by Dr. Hemsath as well as other treating sources, the Court is unable to discern whether the ALJ's Decision is based on substantial evidence. *See McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006). Thus, on remand, the ALJ must articulate the weight afforded to Dr. Hemsath's opinions, including his

GAF score of 29.  *Id.*  Further, the ALJ must demonstrate that she properly considered all of the relevant impairment evidence on record, including the opinions and GAF scores of those sources not deemed "acceptable" under the Social Security regulations.  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  If the ALJ's additional evaluation of the medical evidence results in a contrary credibility finding or less restrictive RFC assessment, the ALJ must amend her decision accordingly.

### B.      The Plaintiff's Remaining Arguments

The Plaintiff presents a number of alternative arguments in her brief, which involve similar issues relating to the ALJ's analysis of the medical evidence on record in this case and assessment of the Plaintiff's subjective symptoms.  Since, on remand, the ALJ must re-evaluate the medical opinions on record, which may ultimately result in the imposition of a more restrictive RFC or modified credibility finding, the Court finds that the disposition of these remaining issues would be, at this time, premature.

### V.  Conclusion

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

1.      The Commissioner's final decision in this case be **REVERSED** and **REMANDED** for further proceedings consistent with the findings in this order.

2.      The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

3.      The Plaintiff be advised that the deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after the Plaintiff receives notice from the Social Security Administration of the amount of past due benefits awarded.

4.      The Plaintiff be directed that upon receipt of such notice, she shall promptly email Mr. Rudy and the OGC attorney who prepared the Government's brief to advise that the notice has been received.

**IT IS SO REPORTED** in Tampa, Florida on January 15, 2015.

ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).

Copies furnished to:

Hon. Virginia Covington
Counsel of Record